**FIFTH DIVISION
DILLARD, P. J.,
PETERSON and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**December 8, 2016**

# In the Court of Appeals of Georgia

A16A1735. CULLARA v. BUILDING & EARTH SCIENCES, INC.

PETERSON, Judge.

An employee of Building & Earth Sciences, Inc. ("BES") drove a company vehicle while drunk and collided with Frank Cullara's vehicle. Cullara sued the now-former employee and BES. The trial court granted summary judgment to BES on Cullara's negligent entrustment claim, concluding that BES had no knowledge that the former employee had a pattern of reckless driving because the evidence showed the company's knowledge of only one prior DUI conviction. Cullara appeals and argues that in concluding that BES did not have knowledge of the former employee's additional prior DUI convictions, the trial court erred by reviewing the record evidence in the light most favorable to BES and resolved conflicting evidence in BES's favor. Cullara also argues that the court failed to consider whether BES

voluntarily assumed a duty to investigate the former employee's driving background. We reverse the trial court's grant of summary judgment because there is evidence creating genuine issues of material fact as to whether BES had knowledge of the former employee's multiple DUI convictions that could sustain a negligent entrustment claim.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the record and all reasonable inferences in favor of the nonmoving party." *Mastec N. Am., Inc. v. Sandford*, 330 Ga. App. 250, 250 (765 SE2d 420) (2014) (citation omitted).

So viewed, the record shows that BES hired David Scott in January 2012. On his employment application, Scott listed a 1998 conviction for possession of cocaine, but he did not list any of his multiple DUI convictions. Scott admitted in his deposition that he had more than four DUI convictions.

Scott deposed that he was interviewed by two BES employees prior to being hired, and that he told the interviewers "everything" about his history with drugs and alcohol. When specifically asked at his deposition whether he told one of the BES interviewers about his prior DUI convictions, Scott answered, "Yes, sir. He knew."

2

When asked how many he reported, Scott responded, "I did not specify." Scott said he believed he told the interviewers about his 2002 DUI conviction and that he had many offenses and a "checkered past," but he was unsure if he specifically told them about his other DUI convictions. When pressed on the issue, Scott said he was positive BES knew about his background because, although he did not specifically remember discussing his numerous DUI convictions, he told him he had prior violations and discussed with them the nature of whatever "motor vehicle check" they would conduct. Scott further deposed that he told the interviewers that his license had been reinstated in 2010 after it was suspended following his 2002 DUI conviction. He further testified that, although he could not recollect the entire interview, he was honest with the interviewers and, therefore, must have told them that his license had been suspended on numerous occasions. Scott also reported to the interviewers that, at the time of his interview, he was living in a transitional center and was in a substance abuse recovery program.

Prior to hiring Scott, BES conducted a background investigation with Scott's consent. The investigation reviewed Scott's Social Security information, his federal criminal history, his credit and employment history, and his motor vehicle record. BES's current human resources director, who was not the individual who conducted

the background check on Scott, testified that Scott's file contained a motor vehicle report showing a clean driving history. The motor vehicle report, however, searched only for violations in the preceding three years. The human resource director testified that Scott's personnel file did not contain a criminal history report, but that the company usually received this report as part of its background investigation, and it was unknown why the criminal history report was missing from the file. BES subsequently supplemented the record with the complete background report, and the federal criminal history section did not reveal any convictions.[1]

About eight months after he was hired, Scott asked his supervisor for permission to use a company truck to move a mattress set into a new home. Although a company policy prohibited the use of company vehicles for personal use, a BES supervisor gave Scott permission to use the vehicle to move personal items. Scott picked up the truck on a Saturday morning after drinking two beers. Scott consumed several more alcoholic beverages at lunch before colliding with Cullara. Scott was arrested for and later pleaded guilty to driving under the influence, as well as failure to maintain lane. BES terminated Scott.

---

[1] There is no explanation why BES did not order a state criminal background report.

Cullara filed suit against Scott and BES. Cullara alleged that BES negligently entrusted the company vehicle to Scott because it allowed Scott to use the vehicle despite having knowledge of Scott's extensive history of driving under the influence. In its motion for summary judgment, BES argued that it was not on notice that Scott was a dangerous driver because he listed only one criminal violation on his application — the 1998 conviction for possession of cocaine — and, even assuming Scott reported multiple DUI convictions during his interview, BES was entitled to rely on the criminal history check that did not reveal any prior convictions. The trial court granted summary judgment to BES, finding that Scott testified that he told the company only about his 1998 cocaine possession conviction and his 2002 DUI conviction and further background checks revealed no federal criminal record. The trial court concluded that Scott's 2002 DUI conviction was insufficient to establish a pattern of reckless driving. This appeal ensued.

Cullara argues that the trial court erred in granting summary judgment to BES on his negligent entrustment claim because the court disregarded favorable portions of Scott's conflicting testimony about BES's knowledge of his DUI convictions and improperly inferred that Scott reported only one DUI conviction. We agree.

"In a negligent entrustment claim, liability arises from the negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless." *Bashlor v. Walker*, 303 Ga. App. 478, 480 (1) (a) (693 SE2d 858) (2010) (punctuation and footnote omitted); *see also Gunn v. Booker*, 259 Ga. 343, 347 (3) (381 SE2d 286) (1989). "[A] plaintiff in a negligent entrustment action is not limited to showing actual knowledge of the entruster inasmuch as that plaintiff may show actual knowledge of a pattern of reckless driving or facts from which such knowledge could reasonably be inferred." *CGL Facility Mgmt., LLC v. Wiley*, 328 Ga. App. 727, 732 (2) (b) (760 SE2d 251) (2014) (punctuation and citation omitted).

In this case, Cullara presented evidence sufficient to defeat BES's motion for summary judgment. Scott deposed that a BES supervisor gave him permission to use a company vehicle for his personal use, thus establishing for summary judgment purposes that BES entrusted him with a company vehicle. There are questions of material fact as to whether BES was negligent in doing so.

We acknowledge, as the trial court did, that Scott "repeatedly testified that he could not recall whether he told the BES employees about any other criminal history beyond his 1998 cocaine possession conviction and his 2002 DUI (and possibly the

6

contemporaneous marijuana possession)." During several parts of his deposition, Scott stated that he did not specifically remember discussing his numerous DUI convictions with BES employees and was unsure whether he told the company about other DUI convictions aside from his 2002 conviction. Although the trial court found that Scott disclosed his checkered criminal background and that his license had been suspended several times, it ruled that these disclosures were "neutral" and "not affirmative evidence that Mr. Scott advised BES during the interview that he had multiple DUIs."

In reaching this conclusion, the trial court failed to construe the "neutral" evidence in Cullara's favor and it ignored other, less ambiguous testimony on the issue. The court concluded that it was not clear how many DUI convictions Scott had, at the same time acknowledging Scott's testimony that he had more than four DUI convictions at the time of his interview. Scott further testified that, in addition to BES having been made aware of his 1998 cocaine possession conviction by virtue of his disclosure on his employment application, BES "knew everything" and "was totally informed" about his prior history with drugs and alcohol, which could reasonably be construed to include his prior DUI convictions. Scott also was asked during his deposition, "So did you tell [one of the interviewers] about your prior convictions for

7

driving under the influence?" Scott answered, "Yes, sir. He knew." In response to another question about whether he told BES about his numerous DUIs, Scott testified that he told the BES employees that he had prior violations.

Although Scott may have at times been unclear about what he reported to BES, the testimony cited above constitutes affirmative evidence that Scott told BES about his multiple DUI violations and was thus sufficient to preclude the grant of summary judgment to BES. To defeat a summary judgment motion, the nonmoving party need not present conclusive proof to rebut the movant's evidence, but must only produce or point to specific evidence, even slight, giving rise to a triable issue of material fact. *See Lee v. SunTrust Bank*, 314 Ga. App. 63, 63 (722 SE2d 884) (2012); *see also Dalton v. City of Marietta*, 280 Ga. App. 202, 203 (633 SE2d 552) (2006) ("Even slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment[.]") (citation and punctuation omitted). Scott's testimony created a material issue of fact as to whether BES had knowledge of Scott's history of DUI convictions.

BES argues that it was entitled to summary judgment under the reasoning of *Patterson v. Southeastern Newspapers, Inc.*, 243 Ga. App. 241, 244-46 (2) (553 SE2d 119) (2000), in which we held that an employer was entitled to summary judgment

8

on a negligent hiring and retention claim notwithstanding the employee-driver's testimony that he had numerous driving violations prior to and after his hiring. We concluded in *Patterson* that the employer did not negligently hire the driver because there was no reason the employer knew or should have known of the driver's bad driving record where the copy obtained by the employer did not reveal infractions for the preceding three years, and the plaintiff did not present any evidence that conducting a more thorough search at the time of the hiring would have revealed the driving infractions. *Id.* at 245-46 (2). We also concluded that the plaintiff's negligent retention claim failed because the driver did not inform the employer about a DUI citation received after his hiring, there was no evidence that the employer did not follow its procedures for regularly checking employee's driving records, and the plaintiff did not suggest a different procedure would have revealed that the driver's license had been suspended as a result of receiving the DUI citation 11 days before the accident. *Id.*

*Patterson* does not apply here. Although both Scott and the driver in *Patterson* testified about having numerous driving violations, there is no indication that the driver in *Patterson* actually told the employer about any of his driving violations. Indeed, our opinion in that case reveals that the driver withheld information from his

employer. *See Patterson*, 243 Ga. App. at 245 (2) ("[The driver] did not inform the newspaper of [the DUI] incident despite agreeing at the time of his employment to tell of any 'major citations ... (i.e., suspended license, canceled insurance).'"). In this case, however, Scott testified that he told BES about his multiple DUI convictions. To the extent BES suggests, as it did below, that it was entitled to ignore Scott's statements or his written application and could instead rely solely on a criminal background check, BES points to no authority for this proposition. As it noted in its brief in support of its motion for summary judgment, the issue is whether BES knew or should have known that Scott was a high risk driver. Nothing in *Patterson* can be read as providing that the evidence that may establish this element is limited to an employee's driving record or criminal history report. Accordingly, we reverse the grant of summary judgment to BES.[2]

*Judgment reversed. Dillard, P. J., and Reese, J., concur.*

---

[2] In the light of this conclusion, we need not consider Cullara's remaining arguments.

10